CADES SCHUTTE LLP

MILTON M. YASUNAGA     3058
MARTIN E. HSIA         2954
1000 Bishop Street, Suite 1200
Honolulu, HI 96813-4216
Telephone: (808) 521-9200
E-mail: myasunaga@cades.com

Attorneys for Plaintiffs
WILLIAM R. KOWALSKI and
HAWAII INTERNATIONAL SEAFOOD, INC.

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WILLIAM R. KOWALSKI and HAWAII INTERNATIONAL SEAFOOD, INC., <br><br> Plaintiffs, <br><br> v. <br><br> ADVANCED FRESH CONCEPTS CORPORATION and ADVANCED FRESH CONCEPTS FRANCHISE CORPORATION (doing business as "AFC" and "SOUTHERN TSUNAMI"), <br><br> Defendants. | CIVIL NO. 04-00053 SPK-LEK <br><br> FIRST AMENDED COMPLAINT; DEMAND FOR JURY TRIAL; EXHIBITS A – G; SUMMONS; CERTIFICATE OF SERVICE |

## FIRST AMENDED COMPLAINT

Plaintiffs WILLIAM R. KOWALSKI (Kowalski) and HAWAII

INTERNATIONAL SEAFOOD, INC. (Hawaii International), on personal knowledge as to their own activities and on information and belief as to the activities of others, hereby allege as follows:

1.    This court has jurisdiction over the subject matter of this action pursuant to:  (A) 28 U.S.C. § 1338(a) and 28 U.S.C. § 1331, in that this action includes a claim for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1, et seq., and a claim for unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); (B) 28 U.S.C. § 1338(b), in that this action asserts claims of unfair competition that are joined with a substantial and related claim under the patent laws; and (C) 28 U.S.C. § 1367(a), in that any other claims are related to the claims for patent infringement and unfair competition are therefore proper under this court's supplemental jurisdiction.

2.    Venue for this action is proper in this Court pursuant to 28 U.S.C. §§ 1391 and 1400(b) and there is jurisdiction over Defendants ADVANCED FRESH CONCEPTS CORPORATION and ADVANCED FRESH CONCEPTS FRANCHISE CORPORATION (both also known as AFC CORPORATION and doing business as "Southern Tsunami")(collectively, "AFC/Southern Tsunami") because **AFC/Southern Tsunami** have committed acts of infringement and other actionable acts in this judicial district.

<u>COUNT ONE</u>

<u>(Patent Infringement of the '401 Patent – 35 U.S.C. § 271</u>

3.    The allegations of paragraphs 1 through 2 above are realleged and incorporated by reference.

4.    On October 26, 1999, the United States Patent and Trademark Office issued United States Patent No. 5,972,401 (the '401 Patent) to Mr. Kowalski. (Exhibit A is a copy of the '401 Patent.)  At all relevant times, Mr. Kowalski has been the owner of the '401 Patent.

5.    The Kowalski '401 Patent broadly covers the treatment of food with smoke from which sufficient taste causing components have been removed so that the treated food does not end up with (or retain) taste imparted from the smoke – thus, such smoke is commonly described as tasteless smoke. (See, for example, claims 67, 50, 49, and 1 of the '401 Patent, which appear at Columns numbered 28, 26, and 22 on the last 4 pages of Exhibit A.  These claims do not mention [and are therefore not limited to] any particular equipment, method for removing taste from the smoke, names, etc.  See also, for example, the section of the Patent titled "Summary Of The Invention", at lines 25-30 of column "12", which states, "Smoke can be superpurified by any method, or combination of methods ….")

6.    As the '401 Patent explains, the benefits of Mr. Kowalski's patented process include the following:  Untreated fish or other meat turns brown after

freezing and thawing, which renders the meat unsuitable for use raw as sashimi or on sushi, and much less desirable even when sold as steaks for cooking.  In contrast, meat treated with tasteless smoke retains its natural red color through freezing and thawing and, because the meat does not have any smoke taste, the meat is suitable for the many uses in which taste from smoke is not desired.  (Ex. A at Columns 1 and 2.)

7.    Under the Process Patent Amendments Act of 1988, infringement liability is not limited only to those who use the process, but also extends to those who import or sell the product that was made with the process.  Thus, 35 U.S.C. Section 271(g) provides "(g)  Whoever without authority imports into the United States or sells or uses within the United States a product which is made by a process patented in the United States shall be liable as an infringer …."

8.    Under 35 U.S.C. § 282, the '401 Patent is presumed valid.

9.    At times after October 26, 1999, AFC/Southern Tsunami have, without authorization from Mr. Kowalski, imported, offered to sell, or sold fish processed with tasteless smoke, and may be continuing to do so.

10.    At times after October 26, 1999, AFC/Southern Tsunami, without authorization from Mr. Kowalski, imported, offered to sell, or sold products or food made by the process covered by the '401 Patent, and may be continuing to do so.

11.    AFC/Southern Tsunami infringed and may be continuing to infringe the '401 Patent, directly, contributorily, and/or by inducement, in violation of 35 U.S.C. § 271.

12.    Mr. Kowalski has owned Hawaii International from before the patent issued.

13.  Since the time the '401 Patent issued, Mr. Kowalski and his company Hawaii International have caused notice of the '401 Patent to be placed on the frozen seafood made with Mr. Kowalski's patented process and imported and sold by Hawaii International, and Mr. Kowalski has given written notice to AFC/Southern Tsunami of their infringement.

14.    AFC/Southern Tsunami have had notice of their infringement called for by 35 U.S.C. § 287(b)(5) from at least as early as February 3, 2003, when they received the notice of infringement letter dated January 29, 2003, a copy of which is attached as Exhibit B to this Complaint.

15.    AFC/Southern Tsunami did not respond to the notice of infringement:

(a) by providing any written statement from their manufacturer "which on its face sets forth a well-grounded factual basis for a belief that the identified patent [is] not infringed" (as called for by the Process Patent Amendments Act of 1988) or

(b) by even denying that the frozen fish they were selling was treated

with tasteless smoke.

16.    AFC/Southern Tsunami did not respond in good faith to the notice of infringement under 35 U.S.C. § 287.

17.    Under 35 U.S.C. § 295, Plaintiffs are entitled to the statutory presumption that the product was made with the patented process.  In addition, AFC/Southern Tsunami were supplied by suppliers for which there is evidence that their fish was processed with smoke for color retention but with no smoke taste or odor, which suppliers were not licensed by Kowalski.

18.    As a result of AFC/Southern Tsunami' infringement of the '401 Patent, Plaintiffs have been and continue to be injured in their business and property rights, and are entitled to recover damages for such injuries pursuant to 35 U.S.C. § 284 in an amount to be determined at trial.

19.    On information and belief, AFC/Southern Tsunami' infringement of the '401 Patent has been and continues to be deliberate and willful and AFC/Southern Tsunami did not respond in good faith to notice of infringement under 35 U.S.C. § 287, thereby rendering this an exceptional case pursuant to 35 U.S.C. §§ 284 and 285, and entitling Plaintiffs to treble damages and reimbursement of their attorneys' fees.

20.    On information and belief, unless enjoined by this Court, AFC/Southern Tsunami will continue to infringe the '401 Patent, and Plaintiffs

will suffer irreparable harm for which there is no adequate remedy at law.

Accordingly, Plaintiffs are entitled to preliminary and/or permanent injunctive

relief against such infringement pursuant to 35 U.S.C. § 283.

COUNT TWO
(A. Fraud;
B. Fraudulent, Malicious, Willful, Knowing, and/or Intentional Use of False or
Misleading Description or Representation of Fact Which Misrepresents the Nature,
Characteristics, Qualities, or Geographic Origin of Goods;
C. Fraudulent, Malicious, Willful, Knowing, and/or Intentional Unfair Competition
and Unfair or Deceptive Acts or Practices in the conduct of Trade or Commerce; or
D. Fraudulent, Malicious, Willful, Knowing, and/or Intentional Deceptive Trade
Practices)

21.    The allegations of paragraphs 1 through 20 above are realleged and

incorporated by reference.

22.    Although some of AFC/Southern Tsunami' fish infringed the '401

Patent, as to other fish, **AFC/Southern Tsunami falsely, misleadingly, and**

**deceptively represented that their fish was treated with tasteless smoke when**

**in truth AFC/Southern Tsunami' fish is actually treated with chemical carbon**

**monoxide gas, which artificially exaggerates its color and quality.**

AFC/Southern Tsunami hid and concealed from the buyers the fact that its fish was

treated with chemical carbon monoxide gas.  AFC/Southern Tsunami's false,

misleading, and deceptive conduct was done fraudulently, maliciously, willfully,

knowingly, and/or intentionally and occurred over several years through

affirmatively misleading, incorrect, and untrue labeling and other representations.

See, e.g., Exhibit C, an AFC/Southern Tsunami label stating "INGREDIENTS: …
TASTELESS SMOKED TUNA".

23.     On September 3, 1998, Richard V. Cano, Deputy Director of the
Seafood Inspection Program of the U.S. Department of Commerce's National
Oceanic and Atmospheric Administration ("NOAA") issued a directive (Exhibit D)
explaining (a) how the U.S. government did not allow the use of chemical carbon
monoxide gas and would not "lot inspect" (i.e., place governmental approval
marks or certifications on ) such product treated with chemical carbon monoxide
gas because chemical carbon monoxide gas artificially enhances the color of fish to
make it a brighter red than it was before it was treated and frozen, and chemical
carbon monoxide gas also unnaturally fixes that artificially intense color so the fish
after thawing stays bright red even when the fish becomes spoiled, thereby making
the fish appear in better condition or of greater value than it actually is, but (b) in
contrast, the government approved tasteless smoke and would inspect and certify
products made with it because it does not enhance the natural color of the fish but
merely keeps it from getting brown when frozen, and tasteless smoked treated
fish's natural red color degrades normally over a few days after the frozen fish is
thawed, so the consumer can tell from the color when the fish is no longer good:

> The purpose of this Memorandum is to clarify the position of the NOAA
> Seafood Inspection Program (NSIP) relative to the inspection of products
> that have been subjected to a process involving carbon monoxide (CO) gas.

During the past few years, there has been an apparent increase in the practice of applying CO to tuna products such as steaks or sashimi cuts to enhance the color of the product. The U.S. Food and Drug Administration [FDA] considers such product which has been subjected to such a process to be adulterated … in that damage or inferiority has been concealed and/or that a substance has been added to make it appear better or of greater value than it is. It has been the policy of the NOAA Seafood Inspection Program not to lot inspect, apply marks, or certify such product.

In 1997, NOAA became aware of a process which employed what the company termed "tasteless smoke". The purpose of its application was to retard the development of the brown color that rapidly occurs in tuna flesh after it has been cut…. Unlike other processes that result in the color of the product being enhanced or brightened and fixed though the use of higher concentrations of CO, this [tasteless smoke] process did not enhance the natural color and the color of the flesh degraded over time. At the request of the importer, Hawaii International Seafood, Inc. (HIS), NOAA performed verification inspections in overseas plants that were using the "tasteless smoke" process. Subsequent to these verification audits, HIS provided data to the FDA through correspondence and meetings to support the acceptability of its process. This resulted in the following policy statement which I distributed by E-mail on October 7, 1997:

> Based on the outcome of a meeting that was recently held between representatives of Hawaii International Seafood, Inc. and the FDA Office of Seafood (OS), as well as my subsequent conversations with Mr. Phillip Spiller and Dr. Anthony Brunetti of the FDA-OS, we will re-institute offering inspection services for product that has been treated with "tasteless smoke".

It has come to our attention that considerable amounts of frozen tuna … are being imported from sources that utilize CO to enhance and fix the color of the flesh…. Many firms are using statements such as "tasteless smoke" which was first coined by Hawaii International as part of their [Hawaii International's] accepted method, but has been "borrowed" by others that have not followed the same acceptance procedure.

24.    Furthermore, on August 14, 1997, the U.S. government stated

"Carbon monoxide is neither generally recognized as safe (GRAS) as a food

ingredient, nor has it been shown to be safe for use either as a food or color additive …. Moreover, the use of CO obviously enhances the natural red color of tuna flesh, potentially causing consumers to be misled about the true nature or value of the tuna. Therefore, … the use of CO results in economic adulteration … because it makes the tuna 'appear better or of greater value than it is.'" (An accurate copy of this letter is attached as Exhibit E, and see Exhibit F, an accurate copy, with highlighting added, of the government's follow up letter of December 9, 1997, clarifying that the conclusions in its August 14, 1997 letter were about chemical carbon monoxide gas and not tasteless smoke.)

25.     In contrast to chemical carbon monoxide gas, the U.S. government concluded "There is no evidence to suggest that 'tasteless smoke' poses a health risk to the consumer from the ingestion of treated product…. Hawaii International has provided data to support their view that 'tasteless smoke' is GRAS [Generally Recognized As Safe] by submitting a GRAS notification document to FDA's Office of Premarket Approval. On March 10, 2000, FDA has responded that the agency has no questions at this time regarding the conclusion of Hawaii International that tasteless smoke is GRAS …. NOAA has implemented a policy … to inspect and certify only tuna products treated with 'tasteless smoke,'" (a copy of this letter, with highlighting added, is attached as Exhibit G).

26.     Moreover, in contrast to chemical carbon monoxide gas, the use of

smoke to safely treat and preserve foods dates back thousands of years. Consumers, through long experience, have learned that smoke treatment is a safe means of treating foods and have become comfortable with purchasing and eating smoked foods, including smoked ham, sausage, and salmon and other fish. Given the above factors, many consumers and other customers were willing to buy smoked fish (including tasteless smoked fish where smoke taste was not desired) but not fish known to be treated instead with chemical carbon monoxide gas.

27.    AFC/Southern Tsunami have, in the course of commercial advertising or promotion, fraudulently, maliciously, willfully, knowingly, and/or intentionally used false, misleading, fraudulent, and deceptive descriptions of fact and false, misleading, fraudulent, and deceptive representations of fact (a) which misrepresented the nature, characteristics, qualities, and geographic origin of AFC/Southern Tsunam's goods and commercial activities, and (b) which are likely to cause confusion and which did cause confusion as to the origin, sponsorship, or approval of AFC/Southern Tsunami's goods, and (c) which constitute passing off.

26.    AFC/Southern Tsunami have fraudulently, maliciously, willfully, knowingly, and/or intentionally engaged and are engaging in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce; AFC/Southern Tsunami have made and are making deceptive representations or designations of geographic origin in connection with their

goods; represent that goods have characteristics or ingredients that they do not have; represent that goods are of a particular standard, quality, or grade, or that goods are of a particular style, when they are of another; engage in other conduct which creates a likelihood of confusion or of misunderstanding.

27.    The above actions were done fraudulently, maliciously, willfully, knowingly, and/or intentionally.

28.    AFC/Southern Tsunami's conduct constitutes fraudulent, malicious, willful, knowing, and/or intentional:  (a) use of false or misleading description or representation of fact which misrepresents the nature, characteristics, qualities, or geographic origin of goods; (b) unfair competition; (c) unfair or deceptive acts or practices in the conduct of any trade or commerce; (d) deceptive trade practices; (e) fraud; and (f) other wrongful conduct under 15 U.S.C. §1125(a)(1) (which is Section 43(a)(1) of the Lanham Act), Haw. Rev. Stat. Sections 480-2, 480-13, 481A-3, etc., and the common law.

29.    AFC/Southern Tsunami's conduct provided AFC/Southern Tsunami with substantial profits to which it was not entitled and caused Plaintiffs to suffer substantial lost sales, damages and other injury and Plaintiffs are reasonably likely to suffer further injury, and are entitled to damages, lost profits from lost sales, treble damages, punitive damages, statutory damages, and/or AFC/Southern Tsunami's profits.  AFC/Southern Tsunami's conduct is causing Plaintiffs

irreparable harm and entitles them to injunctive relief.

WHEREFORE, Plaintiffs request entry of judgment in their favor and against AFC/Southern Tsunami as follows:

A. Declaring the '401 Patent valid and enforceable, and that AFC/Southern Tsunami have infringed one or more claims of that patent;

B. Preliminarily and permanently enjoining AFC/Southern Tsunami and their agents, representatives, employees, servants, officers, directors, shareholders, attorneys, affiliates, trustees, successors, assigns, and any others within their control or supervision, and all persons acting in active concert or participation with them, from further infringing, contributing to and/or inducing the infringement of the '401 Patent, in accordance with 35 U.S.C. § 283, or assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to above;

C. Awarding Mr. Kowalski damages in an amount adequate to compensate him for AFC/Southern Tsunami's patent infringement, in accordance with 35 U.S.C. § 284, including pre-judgment interest;

D. Increasing the damages to three times the amount found or assessed by virtue of the deliberate and willful nature of AFC/Southern Tsunami's patent infringement, in accordance with 35 U.S.C. § 284;

E. Awarding Plaintiffs AFC/Southern Tsunami's profits, Plaintiffs'

damages, Plaintiffs' lost profits from lost sales, treble damages, statutory damages, and/or punitive damages, and prejudgment interest for harm caused by AFC/Southern Tsunami's unfair competition; unfair or deceptive acts or practices in the conduct of any trade or commerce, deceptive trade practices; fraud; false, misleading, fraudulent, and deceptive descriptions of fact and false, misleading, fraudulent, and deceptive representations of fact which misrepresented the nature, characteristics, and qualities of AFC/Southern Tsunami's goods; and other conduct described above.

    F.  Preliminarily and permanently enjoining AFC/Southern Tsunami, their agents, representatives, employees, servants, officers, directors, shareholders, attorneys, affiliates, trustees, successors, assigns, and any others within their control or supervision, and all persons acting in active concert or participation with them, from further unfairly competing/using deceptive trade practices, mislabeling and misrepresenting AFC/Southern Tsunami's frozen chemical carbon monoxide treated products as being treated with "tasteless smoke" or using other false or misleading words, representations, or impressions, or engaging in or performing any of the other wrongful activities referred to above, or assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to above;

    G. Awarding Plaintiffs their costs, reasonable attorneys' fees, and granting

such other and further relief as this Court deems just and proper.

DATED:  Honolulu, Hawaii, May 26, 2006.

CADES SCHUTTE LLP


/s/ Milton M. Yasunaga
MILTON M. YASUNAGA
MARTIN E. HSIA
Attorneys for Plaintiffs
WILLIAM R. KOWALSKI and HAWAII
INTERNATIONAL SEAFOOD, INC.